**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

NOEL CHESNUT,

        **Plaintiff,**

                                **Civil Action 2:13-cv-939**
                                **Magistrate Judge Elizabeth P. Deavers**

    **v.**

COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Noel Chesnut, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income. This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 19), Plaintiff's Reply (ECF No. 20) and the administrative record (ECF No. 9). For the reasons that follow, the Commissioner's nondisaiblity finding is **REVERSED** and the case is **REMANDED** to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I.    BACKGROUND

Plaintiff protectively filed her applications for benefits on April 9, 2010, alleging that she has been disabled since March 6, 2003, at age 38.[1] (R. at 194-99, 200-03.) Plaintiff alleges

---

[1] Plaintiff originally filed for both social security disability insurance benefits and supplemental security income. Her social security disability insurance benefits claim was denied. Plaintiff has not appealed this decision such that it is not subject to judicial review. Plaintiff has also filed for benefits on at least three prior occasions. It appears she took no further appeal beyond the reconsideration stage. (R. at 89-96, 123-53, 219-20).

disability as a result of epilepsy, temporomandibular joint syndrome ("TMJ"), a neck injury, headaches/migraines, and depression.  (R. at 224.)  Plaintiff's application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Mark A. Clayton held a video hearing on April 9, 2012.  Plaintiff, who was represented by counsel, appeared and testified at the hearing.  (R. at 39-73.)  Cyndee Burnett, a Vocational Expert ("VE"), also appeared and testified at the hearing.  (R. at 74-84.)  On June 22, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 10-24.)  On July 24, 2013, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-5.)  Plaintiff then timely commenced the instant action.

## II.  HEARING TESTIMONY

### A.  Plaintiff's Testimony

At the April 9, 2012 hearing, Plaintiff testified that daily headaches were her most significant problem.  (R. at 60.)  She testified that she has two types of headaches.  The first type causes her to vomit and have sensitivity to light and sound.  (R. at 61.)  Plaintiff testified that she has these severe headaches at least five days per week.  (R. at 62.)  On the other days, she wakes up with a less severe headache, which lasts all day.  (*Id.*)  She also indicated that she has headaches every day that last the entire day.  (*Id.*)  According to Plaintiff, she was in bed three days due to headaches the week before the hearing.  Plaintiff indicated that her headaches did not become severe until approximately eighteen months prior to the hearing.  (R. at 64.)  Her neurologist has prescribed medications to reduce the severity of the headaches, but Plaintiff testified that the medicine does not help her.  (R. at 65.)  Plaintiff testified that bleach, perfume,

2

laundry detergent, candles, and any strong odors can trigger her headaches.  (R. at 71.)  She

indicated that she wears dark glasses when she goes outside because of her light sensitivity.  (R.

at 72.)

Plaintiff testified that, after her headaches, her seizures were her most severe impairment.

According to Plaintiff, she stopped working in 2003 because she began having seizures.  (R. at

54.)  She testified that she has both absent and grand mal seizures.  (R. at 44.)  Plaintiff reported

that her last grand mal seizure occurred in December 2011 and her last absent seizure occurred in

January 2012.  (R. at 44-46.)  Plaintiff indicated that she was on "heavy doses of seizure

medication" at the time of the hearing.  (R. at 54.)  Plaintiff noted that, although her neurologist

cautioned her to not drive for six months following her last seizure, Plaintiff never lost her

license and continued to drive by herself about once a week.  (R. at 51.)

Plaintiff testified that she earned an associate's degree in 2009 or 2008.  (R at 40.)

According to Plaintiff, she took two and a half years to complete the criminal justice program.

She indicated that she was a part-time student and took many classes online.  (R. at 41.)  Plaintiff

lives with her parents, who both work during the day.  (R. at 42.)

## B.    Vocational Expert Testimony

Cyndee Burnett testified as the VE at the administrative hearing.  (R. at 74-84.)  The ALJ

proposed a series of four hypotheticals regarding Plaintiff's residual functional capacity to the

VE.  First, the ALJ asked the VE to determine if there was any work in the regional or national

economy that a hypothetical person of Plaintiff's age, educational background, and work

experience could perform with the following limitations:  unable to climb ladders, ropes, or

scaffolds, avoid hazards such as working at unprotected heights, working around dangerous

moving machinery, or driving as part of work, would need to avoid concentrated exposure to loud noises, and would be limited to simple routine tasks.  (R. 75-76.)   Based on the above hypotheticals, the VE acknowledged that Plaintiff could not perform her past relevant work.  (R. at 76.)  The VE testified that Plaintiff would be able to perform medium exertional level work such as a janitor, with 2,000 regional jobs, a prep-cook with 4,000 regional jobs, and a busser, with 3,000 regional jobs.  (R. at 77-81.)

The ALJ next asked the VE if there would be jobs available in the regional and national economy for a hypothetical individual with the above limitations who also could not work outside or in direct sunlight, and would need to work in an environment that would allow her to wear sunglasses indoors to avoid glare.  (R. at 78-79.)  The VE testified that a hypothetical individual with these limitations would be limited to the busser job at the medium exertional level.  The VE noted that, at the light exertional level, the hypothetical individual could work as a marker for delivery clerk, with 11,000 regional jobs, and a routing clerk, with 4,000 regional jobs.

The ALJ then asked if there would be sufficient jobs for a hypothetical individual with all of the above limitations who would also need to lie down at least one time during the workday for at least thirty minutes.  The VE testified that such a restriction would preclude competitive work.  (R. at 81-82.)  Finally, the VE testified that a hypothetical individual who would miss two days of work per month on a regular basis would be precluded from competitive employment. (R. at 82.)

4

### III.    MEDICAL RECORDS

**A.    Ann M. McLean, D.O.**

The earliest record in the file from Plaintiff's treating neurologist Dr. McLean is dated

March 4, 2008.  (R. at 530.)  Dr. McLean saw Plaintiff for seizures, dizziness, and vertigo.  (*Id.*)

In October 2009, Plaintiff reported she was doing well, despite having migraine headaches about

three times per week.  (R. at 613.)  Plaintiff felt that the migraines were related to her neck or to

stress.  Dr. McLean assessed cervical radiculopathy, migraine, and a history of seizures, which

were well controlled.  She re-prescribed Flexeril and Celexa, as Plaintiff indicated that those

medications were helpful. Specifically, Plaintiff noted that Flexeril helped with her neck pain

and her headaches.  Dr. McLean also prescribed a physical therapy evaluation for Plaintiff's

cervical spine.  (*Id.*)

In January 2010, Plaintiff reported that she had not had a recent seizure.  (R. at 590.)  She

reported frequent dizziness, however, during which Plaintiff saw "objects move in her peripheral

vision" which caused her to feel dizzy.  (*Id.*)  Dr. McLean assessed lightheadedness and vertigo

of unclear etiology.  She also assessed thoracic spine pain, which Plaintiff stated had been

present for a long period of time.  Finally, Dr. McLean assessed complex partial seizures, well-

controlled.  (*Id.*)

Plaintiff underwent physical therapy to the thoracic spine and vestibular rehabilitation in

April and May 2010.  (R. at 596-606.)  During her therapy sessions, Plaintiff reported feeling

stronger and having less severe headaches.  (R. at 599.)  She reported that she was attending

class for full days.  (R. at 597.)  Plaintiff rated her headache pain at a level of 3 on a 0-10 visual

analog scale.  (R. at 601.)

On September 17, 2010, Dr. McLean saw Plaintiff for a neurologic reevaluation for migraine.  Plaintiff reported that her headaches were severe and happening more frequently.  (R. at 613.)  She indicated that the headaches usually occurred in the right frontoparietal area. Plaintiff described the headaches as "bad" on a daily basis.  (*Id.*)   At the time, Plaintiff was awaiting treatment for TMJ. She reported she was taking Excedrin at least twice per day.  Dr. McLean assessed migraine cephalgia, possibly exacerbated by TMJ and frequent medication use with rebound headache and history of well-controlled complex partial seizures.  Dr. McLean felt Plaintiff's headaches would decrease in frequency once her TMJ problem was addressed.  (R. at 612.)

On December 16, 2010, Dr. McLean prepared a narrative assessment for Job & Family Services.  (R. at 917.)  In the assessment, Dr. McLean noted that Plaintiff had incapacitating daily migraines that require treatment with medication.  She further indicated that Plaintiff had a history of complex partial seizures following a traumatic brain injury.  Dr. McLean opined that the combination of these disorders caused Plaintiff to be unable to work in part due to the above-mentioned disorders, their symptoms, her requirement for physician appointments and testing, as well as the side effects of medications.  (R. at 917.)

On February 15, 2011, Dr. McLean noted Plaintiff's seizure disorder was fairly well controlled on a combination of Keppra and gabapentin.  (R. at 916.)  Plaintiff reported no recent seizures.  She did, however, complain of daily headaches and headaches upon waking in the morning.  She tried and discontinued Topamax, which made her migraines worse.  Dr. McLean started Plaintiff on Zonegran.  (R. at 916.)  Dr. McLean also opined that Plaintiff would need to lie down one or two times each day due to her headaches.  (R. at 783.)

On May 10, 2011, Plaintiff reported experiencing her headaches about five days out of the week. She also reported that she sleeps throughout the night but is often tired in the morning. Dr. McLean assessed migraine cephalgia, which has "increased in frequency and may be related to stress and at times poor sleep." (R. at 915.)

On February 17, 2012, Plaintiff reported that she was still suffering from frequent migraines, and complained that her insurance would not cover one of her prescriptions. Dr. McLean noted that Plaintiff's seizures were well controlled by Keppra. (R. at 931.)

**B.     David Sharkis, M.D.**

On June 2007, Dr. Sharkis, examined Plaintiff on behalf of the State Agency. (R. at 836-43.) Plaintiff presented with a history of seizure disorder, the onset of which was three years prior to this examination. Plaintiff believed that her seizure disorder was related to motor vehicle accident she had been in four years prior to the examination. Plaintiff indicated that, despite multiple medications, she had had problems with recurrent seizures. She reported her last seizure had been two months prior to the June 2007 examination. Plaintiff also reported multiple medication changes, but noted that she was compliant with her recent medical regimen.

Plaintiff reported persistent left hip pain following a hip fracture and open reduction internal fixation in 2002. (R. at 840.) She also underwent surgery for her left ankle after a fall and reported she has had persistent left ankle pain. (*Id.*) On examination, Plaintiff was 5'7", 165 pounds. She ambulated with a narrow-based gait. Heart and lungs were both within normal limits. Her left ankle has mild to moderate swelling and a lateral linear scar which was well healed. Examination of her left hip showed well-healed surgical scar. (R. at 841.) An x-ray of her left hip was unremarkable. (R. at 843.) Dr. Sharkis assessed recurrent seizure disorder by

7

history and left hip pain.  (*Id.*)  Dr. Sharkis concluded that, based on the presumed diagnosis of recurrent seizure disorder refractory to antiepileptic therapy, Plaintiff was unable to drive, unable to ladder climb, and unable to lift more than 20 pounds.  Dr. Sharkis placed no restrictions on her ability to sit, stand, walk, handle objects, hear, or speak.  (*Id.*)

C.     **Current State Agency Evaluations**

In July 2010, State Agency physician, Gary Hinzman, M.D., reviewed the record and assessed Plaintiff's physical functioning capacity.  (R. at 757-64, 779-80.)  Dr. Hinzman opined that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, could stand and/or walk about six hours in a workday, and could sit for about six hours in a workday.  (R. at 758.)  According to Dr. Hinzman, overhead reaching in all directions was limited to occasionally bilaterally due to cervical spine degenerative disc disease.  (R. at 760.)  Dr. Hinzman also found that due to Plaintiff's history of seizures, she was limited to no commercial driving, open machinery, unprotected heights, or situations where others depend on Plaintiff for safety.  (R. at 761.)  He noted that Plaintiff was precluded from using ladders, ropes, and scaffolds due to her complaints of vestibular disturbance and documentation of cervical radiculopathy.  (R. at 780.)  Dr. Hinzman concluded that while Plaintiff's allegations of limitation could reasonably be caused by Plaintiff's medically determinable impairments, the severity of these limitations is not entirely consistent with the objective and ancillary evidence of record.  (*Id.*)  In November 2010, state agency physician, Leslie Green, M.D., reviewed the record affirmed Dr. Hinzman's assessment in its entirety.  (R. at 781.)

## IV.  THE ADMINISTRATIVE DECISION

On June 22, 2012, the ALJ issued his decision.  (R. at 10-24.)  At step one of the

sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially

gainful activity since April 9, 2010.  (R. at 15.)  The ALJ found that Plaintiff had the severe

impairments of headaches/migraine cephalgia and vertigo.  (*Id.*)  The ALJ also found that

Plaintiff's epilepsy, mild obstructive sleep apnea, hypothyroidism, gastroenteritis, TMJ, back

pain, right hip and ankle pain, and mental health conditions including depressive disorder,

anxiety, and substance addiction were not severe impairments because they did not cause more

than minimal limitation in Plaintiff's ability to perform basic work activities.  (R. at 16-17.)  He

further found that Plaintiff did not have an impairment or combination of impairments that met

or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  (R. at 18.)  At step four of the sequential process, the ALJ evaluated Plaintiff's

residual functional capacity ("RFC").  The ALJ concluded as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant retained the residual functional capacity to perform a full range of work

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive finding at
any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully
considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or
      equal the criteria of an impairment set forth in the Commissioner's Listing of
      Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant
      perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional
      capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

at all exertional levels but that she should never climb ladders, ropes, or scaffolds; must avoid exposure to hazards such as unprotected heights, working around dangerous moving machinery, and driving as a part of work; must avoid concentrated exposure to loud noises ("loud" would be similar to a can manufacturing department, large earth moving equipment or heavy traffic); and that due to her headaches, must be limited to performing simple repetitive no more than SVP 2 type tasks.

(R. at 19.)  In reaching this determination, the ALJ assigned "little weight" to the opinions of treating neurologist, Dr. McLean.  The ALJ indicated that he found her assessments conclusory and inconsistent with the longitudinal medical evidence.  The ALJ noted Dr. McLean's conclusion that Plaintiff is disabled is a finding reserved to the Commissioner.  The ALJ also found that Plaintiff's seizures are well controlled and Dr. McLean's opinions were not supported by Plaintiff's activities of daily living, including attending school.  (R. at 21.)

The ALJ also gave "little weight" to the assessments of the State Agency reviewing physicians, Drs. Hinzman and Green, concluding that no findings from a physical examination support the existence of an exertional limitation.  (R. at 22.)  The ALJ afforded "some weight" to the limitations identified by Dr. Sharkis, finding the medical evidence provided no support for an exertional limitation, but Plaintiff's limitations in driving and climbing ladders are consistent with her headaches.  (*Id.*)

The ALJ also gave "little weight" to the third party report completed by Plaintiff's mother, Linda Chesnut.  The ALJ supported this conclusion because Plaintiff's mother is not medically trained and cannot be considered a disinterested third party.  The ALJ also notes that Plaintiff's mother's opinion is "not consistent with the preponderance of the observations by medical doctors in this case."  (R at 21.)

The ALJ further noted that Plaintiff's medically determinable impairments could

10

reasonably be expected to cause the alleged symptoms.  He concluded, however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.  (R. at 20.)

Relying on the VE's testimony, the ALJ determined that other jobs exist in the national economy that Plaintiff can perform.  (R. at 22-23.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 24.)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

11

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th

Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ erred in two ways. First,

Plaintiff contends that the ALJ violated the treating physician rule by failing to properly support

his rejection of Dr. McLean's opinion. Second, Plaintiff maintains that the ALJ erred in failing

to impose reasonable work-related limitations caused by Plaintiff's severe post-traumatic

headaches. (Pl.'s Mot. 1, ECF No. 14.) The Court concludes that the ALJ erred by violating the

treating physician rule as it pertains to the opinion of Dr. McLean. This finding obviates the

need for in-depth analysis of Plaintiff's remaining assignment of error. Thus, the Court need not,

and does not, resolve Plaintiff's second assignment of error.

### A. Treating Physician Rule

The ALJ must consider all medical opinions that he or she receives in evaluating a

claimant's case. 20 C.F.R. § 416.927(d). The applicable regulations define medical opinions as

"statements from physicians . . . that reflect judgments about the nature and severity of your

impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408.  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion."  20 C.F.R. § 416.927(d)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, No. 09-3889,

2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court

of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the
> disposition of their cases," particularly in situations where a claimant knows that
> his physician has deemed him disabled and therefore "might be especially
> bewildered when told by an administrative bureaucracy that she is not, unless
> some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128,
> 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating
> physician rule and permits meaningful review of the ALJ's application of the rule.
> *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important

when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v.

Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

Plaintiff asserts that the ALJ did not provide good reasons for assigning little weight to

the opinion of Plaintiff's treating physician, Dr. McLean. Specifically, Plaintiff contends that the

ALJ did not provide sufficient reason for failing to give weight to, or even address, Dr.

McLean's February 15, 2011 opinion that Plaintiff would need to lie down one to two times per

day due to her headaches.

The Court finds that the ALJ failed to comply with the necessary procedural requirements

in determining how much weight to assign to Dr. McLean's opinion. The ALJ provided the

following explanation for assigning little weight:

> Similarly, Dr. McLean provided extreme opinions that the claimant is unable to
> work due to her history of seizures and headaches. Statements that a claimant is
> "disabled", or "unable to work," can or cannot perform a past job, meets a Listing
> or the like are not medical opinions but are administrative findings dispositive of
> a case, requiring familiarity with the Regulations and set for the therein. Such
> administrative findings are reserved to the Commissioner, who cannot abdicate
> his statutory responsibility to determine the ultimate issue of disability. These
> opinions can never be entitled to controlling weight, but must be carefully
> considered to determine the extent to which they are supported by the record as a

whole or contradicted by persuasive evidence.  The undersigned finds these opinions inconsistent with the longitudinal medical evidence including Dr. McLean's findings that the claimant's seizures are well controlled and these opinions are not supported by the claimant's activities of daily living, including attending school.  Therefore, the undersigned gives these opinions little weight.

(R. at 22 (internal citations omitted.))

As an initial matter, to the extent that Plaintiff objects to the weight the ALJ afforded to Dr. McLean's assessment that she was unable to work, that challenge is misplaced.  The ALJ correctly noted that the degree to which an individual is capable of performing work is an issue reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(1) ("[The Commissioner] is responsible for making the determination or decision about whether [the claimant] meets the statutory definition of disability. . . .   A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that you are disabled."); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (holding that the ALJ properly rejected a treating physician's opinion that the claimant was disabled because such a determination was reserved to the Commissioner.).

The ALJ failed, however, to provide good reasons for discounting Dr. McLean's February 2011 opinion that Plaintiff would need to lie down one to two times per day due to her headaches.  In fact, the ALJ fails to address Dr. McLean's opinion as it relates to Plaintiff's headaches at all.  Instead, the ALJ notes only that, according to Dr. McLean, Plaintiff's seizures are well controlled.  Plaintiff does not challenge this conclusion.  A review of the entire administrative record reveals that Dr. McLean saw Plaintiff frequently and treated her for headaches.

15

To support his determination to provide only little weight as opposed to controlling weight for a treating physician, the ALJ notes that Dr. McLean's opinions were not supported by Plaintiff's activities of daily living, including her ability to attend school.  The evidence in the record shows that Plaintiff reported that she was in class all day on April 28, 2010.  (R. at 597.) The record, however, contains no additional evidence to indicate that Plaintiff was in school full time, or that her schooling continued after that date.  Plaintiff testified that she graduated in 2008 or 2009, that she was in school part-time, and that she took many of her classes online.  (R. at 40-41.)  Plaintiff and Dr. McLean both indicated that Plaintiff's headaches progressively worsened over the years.  (*See* R. at 612, 916, 917, and 931.)   Dr. McLean's notes indicate that she did not diagnose Plaintiff with migraine cephalgia until September 2010.  (R. at 612.)   Thus, the ALJ failed to demonstrate that Plaintiff's activities of daily living were inconsistent with her frequent headaches.

Moreover, the ALJ fails to identify substantial evidence to conflict with Dr. McLean's opinion regarding Plaintiff's headaches.  *See Thieman v. Comm'r of Soc. Sec.*, 989 F.Supp.2d 624, 633 (6th Cir. 2013) (concluding that the ALJ violated the treating physician rule, in part by failing to identify evidence to conflict with the treating physician's findings).  The ALJ gives some weight to consultative examiner David Sharkis, M.D.  Dr. Sharkis' 2007 opinion, however, does not address Plaintiff's headaches.  (R. at 836-843.)   The ALJ assigned little weight to the opinions of the State Agency medical consultants.  (R. at 22.)  Those consultants briefly addressed Plaintiff's history of severe migraines, but did not offer opinions contradicting the limitations opined by Dr. McLean.  (R. at 759, 781, 895.)

16

**B.     Harmless Error**

The ALJ's violation of the good reason rule was not harmless error.  The *Wilson* Court considered three possible scenarios that could lead the Court to a finding of harmless error.  378 F.3d at 547.  First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ." *Id.* Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Id.* Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Id.* Since *Wilson*, the Sixth Circuit has continued to conduct a harmless error analysis in cases in which the claimant asserts that the ALJ failed to comply with the good-reason requirement.  *See, e.g.*, *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006) (finding that even though the ALJ failed to meet the letter of the good-reason requirement the ALJ met the goal by indirectly attacking the consistency of the medical opinions); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007) (finding that the facts did not satisfy potential harmless error justifications).

Here, Dr. McLean's opinion is not "so patently deficient that the Commissioner could not possibly credit it." *Wilson*, 378 F.3d at 547.  Second, the ALJ's decision is not consistent with Dr. McLean's opinion that Plaintiff would need to lie down one to two times per day.  In fact, the VE testified such a limitation would be work preclusive.  (R. at 81-82.)  Finally, the ALJ's decision does not otherwise meet the goals of *Wilson*'s reason giving requirement.

17

## C.      Remand Under Sentence Four of 42 U.S.C. § 405(g)

Accordingly, the Court concludes that remand is necessary.  Under Sentence Four of 42

U.S.C. § 405(g) the Court has the power to affirm, modify, or reverse the Commissioner's

decision "with or without remanding the cause for rehearing."  The United States Court of

Appeals for the Sixth Circuit has stated that "'[i]f a court determines that substantial evidence

does not support the [Commissioner's] decision, the court can reverse the decision and

immediately award benefits only if all essential factual issues have been resolved and the record

adequately establishes a plaintiff's entitlement to benefits.'"  *White v. Comm'r of Soc. Sec.*, 312

F. App'x 779, 790 (6th Cir. 2009) (quoting *Faucher v. Sec'y of Health & Human Servs*., 17 F.3d

171, 176 (6th Cir.1994)).  If this is not the case, the Court "should remand to the Commissioner

for further consideration."  *Id.*  Here, the Court has performed a review of the entire record.  The

Court is unwilling to conclude from the current state of the record that all factual issues are

resolved and that Plaintiff is entitled to benefits.  Rather, a remand is the best course of action

because all of the factual issues regarding the impact of Plaintiff's headaches on her ability to

work are decidedly not resolved.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 625-26 (1990)

(concluding that remand under Sentence Four is appropriate when "the evidence on the record

was insufficient to support the Secretary's conclusion and that further fact finding . . . was

necessary.")

## VII.   DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to

the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g).

Accordingly, the Commissioner of Social Security's non-disability finding is **REVERSED** and

18

this case is **REMANDED** to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Opinion and Order.

      **IT IS SO ORDERED.**

Date:  August 8, 2014                              /s/ *Elizabeth A. Preston Deavers*
                                          Elizabeth A. Preston Deavers
                                        United States Magistrate Judge